J-A27004-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: C.L.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1223 EDA 2021 |

Appeal from the Order Entered June 17, 2021
In the Court of Common Pleas of Delaware County Orphans' Court at
No(s):  0085-2019

| | | |
|---|---|---|
| IN RE: ADOPTION OF: G.F.P. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1224 EDA 2021 |

Appeal from the Order Entered June 17, 2021
In the Court of Common Pleas of Delaware County Orphans' Court at
No(s):  0086-2019

BEFORE:  PANELLA, P.J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JANUARY 7, 2022**

Appellant, D.P. ("Mother"), appeals from the June 17, 2021 Orders entered in the Delaware County Court of Common Pleas that involuntarily terminated her parental rights to ten-year-old C.L.P. and nine-year-old G.F.P. (collectively, "Children").  Upon review, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

In his Pa.R.A.P. 1925(a) Opinion, the Honorable Richard H. Lowe provided a detailed and thorough recitation of the factual and procedural history of this case, which we adopt for purposes of this appeal. Trial Ct. Op., filed 8/29/21, at 1-10. In sum, Mother and C.P. ("Father") are biological parents to Children. Father passed away on June 11, 2015. On July 31, 2015, the Delaware County Department of Children and Youth (the "Agency") took emergency custody of Children after concerned neighbors contacted police and the "SWAT" unit found Mother in a semi-conscious state in her home with Children.[1] Police escorted Mother to the Crisis Center at Crozer Chester Medical Center and the Agency placed Children with maternal relatives.

On September 16, 2015, the trial court adjudicated Children dependent, returned Children to Mother's care, and implemented Agency supervision within the home. On July 7, 2016, less than a year later, police arrested Mother for public intoxication when she was found wandering in a parking lot with her Children after ingesting 60 prescribed Xanax within a 14-day period. The Agency once again obtained emergency custody of Children and placed them with their maternal great aunt ("Aunt"), in their present kinship foster home. As a result of numerous arrests and convictions, Mother was incarcerated for 90 days and sentenced to one year of probation. As a condition of probation, Mother was directed to comply with mental health treatment. Mother complied with the terms of her probation and moderately

---

[1] Neighbors had observed Mother outside wearing late Father's football helmet and breaking things in their backyard.

complied with the Agency's permanency plan. On October 10, 2018, after approximately 27 months in kinship care, Children were returned to Mother's care.

Less than three months later, on January 9, 2019, the Agency obtained emergency custody of Children for the third time after the Agency made an unannounced visit to Mother's home, the Agency caseworker observed Children visibly fearful of Mother, and Children reported that Mother physically abused them on a regular basis and would not let them sleep. Mother informed the Agency caseworker that if Mother did not drink alcohol she would die. Children were once again placed in the care of their Aunt.

On May 29, 2019, during a supervised visit, a social worker observed Mother argue with and strangle her son, C.L.P., leaving red marks on his throat. When the social worker attempted to intervene, Mother attempted to strike her. C.L.P. was transported Crozer Chester Medical Center where staff diagnosed him with strangulation. Police subsequently arrested Mother and changed her with Strangulation and other related charges, and after investigation, the Agency determined Mother to be a perpetrator of child abuse against C.L.P. Mother remained incarcerated from May 2019 until October 2019, and on June 11, 2020, pleaded guilty to a lesser charge of Harassment.

On August 9, 2019, the Agency filed involuntary termination of parental rights petitions against Mother regarding Children.

From May 2020 to December 2020, Mother had over twenty encounters with the Marcus Hook Police where she was acting intoxicated and/or erratic

which resulted in incident reports, including Mother: answering her door naked when police arrive at the home on numerous occasions, calling police to the home to observe her holding a dead rabbit and squeezing out the innards, flashing her breasts at neighbors and police, placing her dogs on the roof of one of the police patrol cars in the police parking lot, threatening neighbors and police, instructing police to arrive at her home naked, and inviting police in the home to have sex with her. At least one of the encounters led to police completing an involuntary mental health commitment of Mother due to concerns about her personal safety.

On January 28, 2021, March 12, 2021, and May 13, 2021, the trial court held hearings on the Agency's termination petitions. The trial court heard testimony from Stephen Mechanick, M.D., an expert in the field of psychiatry; Catherine Pace, Marcus Hook Police Department Police Clerk; Police Officer Christopher Reynolds; Stefanos Papadopoulos, Holcomb Behavioral Health substance abuse assessor; Karen Dybner-Madero, Psy.D., a licensed psychologist; Jessica Bishop, Agency caseworker; and Mother. The Agency submitted exhibits into evidence including, *inter alia*, four psychiatric evaluations of Mother conducted by Dr. Mechanick, twenty police incident reports regarding Mother, Mr. Papadopoulos's substance abuse assessment of Mother, and four psychological evaluations of Mother and Children conducted by Dr. Madero.

The Agency's witnesses testified to the above events. Additionally, Dr. Mechanick testified that he diagnosed Mother with alcohol use disorder;

benzodiazepine use disorder, particularly Xanax; stimulant use disorder, particularly Adderall; and an unspecified personality disorder. N.T. Hearing, 1/28/21, at 19. Dr. Mechanick further testified that Mother's diagnoses have remained consistent throughout his four evaluations, Mother has not sustained any improvement in her psychiatric condition, Mother has not achieved or maintained sobriety, and his opinion—to a reasonable degree of psychiatric certainty—is that Mother cannot safely provide for Children physically and emotionally. *Id.* at 19-72.

Mr. Papadopoulos testified that he completed a comprehensive substance abuse assessment of Mother on November 2, 2020, and based upon Mother's report that she regularly uses alcohol and benzodiazepines, Mother met the criteria for inpatient short-term rehabilitation. *Id.* at 273-275.

Dr. Madero testified that she completed multiple bonding evaluations, both between Mother and Children and between Aunt and Children. Dr. Madero testified that Children love Mother, but do not feel safe in her care and that it is not a beneficial relationship for Children. N.T. Hearing, 3/12/21, at 33-34. She stated, in her opinion, that termination of parental rights is in Children's best interest and that Children would feel relieved and "an enormous emotional burden lifted off of them." *Id.* at 51-52.

Caseworker Ms. Bishop testified that Mother was often combative, aggressive, and threatening, that Mother would not accept services or allow the Agency into her home, and that Mother disagreed with treatment recommendations. *Id.* at 174. Ms. Bishop further testified that Mother

displayed erratic behavior in front of Children during scheduled visitations, including calling Children liars, berating Children, repeatedly cursing in front of Children, appearing intoxicated, slurring speech, and appearing in inappropriate clothing. *Id.* at 174-198. Ms. Bishop stated that C.P. told her multiple times that he wants to be adopted, and that both Children have expressed wanting to end or shorten visitation. *Id.* Finally, Ms. Bishop testified that Children are thriving in their kinship foster home with Aunt, and that a termination of parental rights is in Children's best interest.

On May 19, 2021, the trial court involuntarily terminated Mother's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(8) and (b).

Mother timely appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925.

Mother raises the following issues for our review:

1. Did the trial court err[] in determining that the [A]gency proved, by clear and convincing evidence, the requirements of 23 Pa.C.S. [§] 2511(a)(8) for the involuntary termination of [Mother]'s parental rights, in that: [t]he trial court erred in not admitting and considering [Mother]'s ongoing mental health / drug and alcohol treatment documentation that continued after the petitions for termination were filed. This treatment should have been considered as indication that the conditions which led to the removal or placement of the child no longer existed as they had when the children were first placed in foster care. These documents were indicative of an ongoing treatment and not actions initiated after the petitions were filed.

2. Did the trial court err[] in determining that the [A]gency proved, by clear and convincing evidence, the requirements of 23 Pa.C.S. [§] 2511(a)(8) for the involuntary termination of [Mother]'s parental rights, in that: [t]he trial court erred in not considering the significantly problematic issue of [Mother]'s

treating physician continuing to provide her with mood altering medications when she had a history of drug dependency. These medications, and [Mother]'s behavior as a result, were a significant factor, put forth by the agency, in criticizing her ability to parent.

3. Did the trial court abuse[] its discretion by giving significant weight to the testimony of Dr. Stephen Mechanick, an [A]gency contracted psychiatrist. Dr. Mechanick did not treat [Mother] but only evaluated her at the request of [the Agency].

4. Did the trial court abuse[] its discretion in finding that the termination of parental rights would best serve the needs and welfare of the children when there is a strong and loving bond between [M]other and [C]hildren, and severance of that bond will cause irreparable harm to [C]hildren.

5. Did the court err in considering the [A]gency's petition to terminate the rights of [Mother] when subsidized permanent legal custodianship would be the more appropriate and least restrictive goal. [C]hildren currently reside with a relative of [Mother] and therefore termination of [Mother]'s parental rights should have been avoided.

6. Did the trial court abuse[] its discretion by failing to properly consider and sustain [Mother]'s counsel's objections and directing the hearings progress?

Mother's Br. at 5-6 (renumbered and reordered for ease of disposition).

**LEGAL ANALYSIS**

When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision,

- 7 -

the decree must stand." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse merely because the record could support a different result. *T.S.M.*, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." *Id.* Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. "Initially, the focus is on the conduct of the parent." *In re Adoption of A.C.*, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). "The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *Id.* (citation omitted). If the court determines that the parent's conduct warrants termination of his or her parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." *Id.* (citation omitted).

## Termination Pursuant to Section 2511(a)(8)

In her first three issues, Mother challenges the trial court's conclusion that the Agency presented clear and convincing evidence to terminate Mother's parental rights pursuant to Section 2511(a)(8) of the Adoption Act.

Section 2511(a)(8) provides for termination of parental rights where the petitioner proves by clear and convincing evidence that "[t]he child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement," and "the conditions which led to the removal or placement of the child continue to exist[.]" 23 Pa.C.S. § 2511(a)(8); *In re C.L.G.*, 956 A.2d 999, 1005 (Pa. Super. 2008) (*en banc*). In addition, the petitioner must prove that termination of parental rights "would best serve the needs and welfare of the child." 23 Pa.C.S. § 2511(a)(8). Section 2511(a)(8) creates a three-prong test requiring consideration of (1) whether the child has been removed from the parent for twelve months or more, (2) whether the conditions which led to the removal continue to exist, and (3) whether termination would best serve the child's needs and welfare. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa. Super. 2003). Section 2511 (a)(8) requires only that the conditions continue to exist, not an evaluation of a parent's willingness or ability to remedy those conditions. *In re Adoption of R.J.S.*, 901 A.2d 502, 511–12 (Pa. Super. 2006). Further, this Court defines the relevant "conditions" broadly. *See In re C.L.G.*, 956 A.2d at 1006-07 (concluding that a parent failed to remedy the conditions which led to her child's removal when the removal resulted primarily from the parent's positive drug test for cocaine and the parent was later incarcerated for drug offenses). Regarding the third prong, it is important to note that the needs and welfare analysis pursuant to Section 2511(a)(8) is distinct from the

needs and welfare analysis pursuant to Section 2511(b), and courts must complete their Section 2511(a)(8) needs and welfare analysis before reaching Section 2511(b). *Id.* at 1009.

Instantly, the trial court found that Children had been removed from the home for the **third** time, and that twelve months or more had elapsed from the date of the most recent placement to the termination hearing. Trial Ct. Op. at 13 n.17. Notably, except for a three-month failed reunification with Mother, Children have been in placement for **over five years**. The trial court also found that that Children were removed from Mother's care due to Mother's mental health issues and substance abuse and "the evidence clearly demonstrates that such conditions have continued to exist, all the way through at least March 12, 2021." *Id.* at 13 n.18. Finally, the trial court found that termination of Children's parental rights would best serve Children's needs and welfare. *Id.* at 13. The trial court opined:

> On the one hand, this is a sad case of a mother whose problems with mental health issues and substance abuse has plagued her for years, and who has been unable to care for her children, for much more than 12 months from the date of removal in January, 2019 for the third and final time. Sadly, the conditions that led to the removal or placement of [] Children continue to exist, and termination of parental right would best serve the needs and welfare of Children. On the other hand, there is much to celebrate about [] Children. It is unrefuted that they are thriving in their foster home with their [A]unt, where they get to see many extended family members on a regular basis and where they have become straight-A students.

*Id.* at 1. The record supports the trial court's findings and we decline to reweigh the evidence. Accordingly, the Agency presented clear and

convincing evidence to terminate Mother's parental rights pursuant to Section 2511(a)(8).[2]

## Mother's Participation in Mental Health Treatment and Key Recovery Program

Mother first argues that the trial court erred in not admitting and considering evidence regarding Mother's mental health treatment with Dr. Katz or her participation in the Key Recovery program, both of which she re-enrolled in subsequent to the notice of the filing of the termination petitions. Mother's Br. at 13-15. Mother acknowledges that Section 2511(b) provides, in relevant part, that: "with respect to any petition filed pursuant to subsection (1)(1), (6), or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b). However, Mother argues that she initiated both treatments prior to the filing of the termination petitions and when she returned to both treatments over a year after discontinuing them, it was a continuation of treatment. Mother's Br. at 13-15.

The trial court rejected Mother's characterization and concluded that both actions were initiated after August 2019, when the Agency gave Mother

---

[2] Mother's argument that the trial court erred in terminating her parental rights under Section 2511(a)(8) because the petitions were filed 7 months after the Agency placed Children in foster care (for the third time) is waived because Mother failed to raise this issue in her Rule 1925(b) Statement. ***See*** Pa.R.A.P. 1925(b)(4)(vii).

notice of the filing of the termination petitions, because "the gaps between her earlier actions and her conduct after the filing of the petition[s] lead the court to conclude that her later conduct was not a continuation of her earlier efforts." *Id.* The record supports the trial court's findings and we discern no abuse of discretion.

## Mother's Treating Physician Dr. Weisner

Mother next argues that the trial court erred in not considering evidence that Mother's treating physician, Dr. Weisner, prescribed her mood-altering medication for over 20 years, and contends that "Mother was physically and psychologically abused by Dr. Wiesner."[3] Mother's Br. at 17-20. Mother's claim lacks merit.

As stated above, Section 2511(a)(8) does not require that the court evaluate a parent's willingness or ability to remedy the conditions which led to the removal of his or her child, just whether the conditions continue to exist. *In re Adoption of R.J.S.*, *supra* at 511. The trial court found that the conditions which led to Children's removal continue to exist, and explained: "even if poor treatment by a doctor who treated her until sometime before August 2018 provides some excuse for her conduct, the fact that her problems continue to the present day means that we have not erred in

---

[3] Dr. Weisner died in 2018 and did not testify at the termination hearings, however Dr. Weisner is mentioned in various evaluations that were admitted into evidence.

considering her continuing conditions, whether or not she has the ability or willingness to remedy such conditions." Trial Ct. Op. at 14. We agree.

**Dr. Mechanick's Testimony**

In her third issue, Mother presents a one-paragraph argument that the trial court placed too much weight on Dr. Mechanick's testimony. Mother's Br. at 30. As stated above, we decline to reweigh the evidence or usurp the trial court's credibility determinations. Where, as here, the record supports the trial court's findings, we decline to find an abuse of discretion. Without more, Mother is not entitled to relief.

**Termination Pursuant to Section 2511(b)**

In her fourth issue, Mother contends that the trial court abused its discretion in terminating her parental rights pursuant to 23 Pa.C.S. § 2511(b). Mother's Br. at 22. To support her argument, Mother makes the bald averment that there is a strong and loving bond between her and Children, and that severing the bond would cause irreparable harm to Children. *Id.* at 21-22. Mother's argument fails.

With respect to Section 2511(b), our analysis focuses on the effect that terminating the parental bond will have on the child. In particular, we review whether "termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). It is well settled that "[i]ntangibles such as love, comfort, security, and stability are involved in the

inquiry into needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted).

One major aspect of the "needs and welfare" analysis concerns the nature and status of the emotional bond that the child has with the parent, "with close attention paid to the effect on the child of permanently severing any such bond." *In re Adoption of N.N.H.*, 197 A.3d 777, 783 (Pa Super. 2018) (citation omitted). The fact that a child has a bond with a parent does not preclude the termination of parental rights. *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014). Rather, the trial court must examine the depth of the bond to determine whether the bond is so meaningful to the child that its termination "would destroy an existing, necessary, and beneficial relationship." *Id.* at 898 (citation omitted). Moreover, the trial court may consider intangibles, such as the love, comfort, security, and stability the child might have with the adoptive resource. *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). Ultimately, the concern is the needs and welfare of the child. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010).

Here, the trial court considered the love, comfort, security, and stability that Children have in their Aunt's home, and emphasized the bond between Children and their Aunt. The trial court opined:

Here, Dr. Madero, the [c]aseworker, the Guardian Ad Litem, and [] Children's attorney all have opined in unqualified terms that [] Children are thriving in Aunt's home, that [] Children have a strong bond with Aunt and her family (all of whom, of course, are each Child's extended family as well), that [] Children have lived happily in that home for the bulk of the last five years, and that

the breaking of the bond between Aunt and [] Children would cause [] Children to suffer. There is no credible evidence that it would be in the best interests of [] Children to return to Mother.

Trial Ct. Op. at 15. Further, the trial court acknowledged that a bond existed between Mother and Children, but rejected Mother's averment that severing the bond would cause irreparable harm to Children. The trial court explained:

Granted, there was credible evidence of a bond between Mother and [] Children, and at various times that bond has been described as strong. But there was also substantial evidence that [] Children wanted to become adopted and stay with their Aunt, to avoid contact with [] Mother (as recently as March 2021), and that they were afraid of being with [] Mother when she would appear to be erratic, physically or emotionally abusive, intoxicated, exposing them to inappropriate situations, and/or cursing at them. Surely all of that cannot be accurately summarized as a "strong and loving bond" that must supersede all other conclusions. Sometimes a court must place a child's need for permanency above that of conflicted emotions about love for a biological parent. Regrettably, that has been necessary for us to do.

*Id.* at 15-16. As the record supports the trial court's findings, we find no abuse of discretion.

**Subsidized Permanent Legal Custody**

In her fifth issue, Mother avers that the court erred in granting termination of parental rights when subsidized permanent legal custody is a more appropriate permanency goal than adoption.[4] Mother's Br. at 27.

---

[4] Subsidized permanent legal custody is one of the permanency goals a juvenile court may consider at each permanency review hearing. 42 Pa.C.S. § 6351(f.1)(3). "SPLC transfers permanent legal custody to the [dependent] child's legal custodian without requiring the termination of . . . parental rights. When deemed appropriate, the trial court has the power to permit continued visitation by the [dependent] child's ... parents." *In re B.S.*, 861 A.2d 974, 977 (Pa. Super. 2004). Alternative permanency arrangements such as

*(Footnote Continued Next Page)*

- 15 -

Mother did not appeal any orders emanating from the juvenile court in Children's dependency case; all that is before this Court is the propriety of the trial court orders terminating parental rights. While we acknowledge that permanency goals and termination proceedings are interrelated, they are undoubtedly separate legal issues. *In re Adoption of J.N.M.*, 177 A.3d 937, 947 (Pa. Super. 2018). We may not decide an issue that is not properly before us. *Id.* Accordingly, we decline to address this issue.

## Objections and Directing Progress of Hearing

In her final issue, Mother avers that the trial court abused its discretion by failing to properly consider and sustain Mother's counsel's objections and directing the hearing's progress. Mother's Br. at 31. The trial court was unable to address this issue and concluded that the issue was waived because it was too vague. Trial Ct. Op. at 11. We agree. *See In re A.B*., 63 A.3d 345, 350 (Pa. Super. 2013) (explaining that a rule 1925(b) statement must be specific enough for the trial court to identify and address the issue and this Court may find waiver where a concise statement is too vague).

## CONCLUSION

In conclusion, the record supports the trial court's findings, and we decline to reweigh the evidence. Accordingly, we conclude that the trial court

---

SPLC offer less stability than adoption because parents may petition the court to attempt to re-gain custody at any time, but SPLC may be appropriate in cases where reunification or adoption is not in the best interest of the child. *See In re S.H.*, 71 A.3d 973, 978 (Pa. Super. 2013).

did not abuse its discretion when it terminated Mother's parental rights to Children pursuant to Sections 2511(a)(8) and (b).

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/7/2022